Melvin *v.* Marshall.

## MELVIN *v.* MARSHALL.

22 379
70 331

The declaration of a deceased person, made on the spot, is competent evidence to prove an ancient boundary, when the person making the declaration had the means of knowledge, and no interest to misrepresent.

Where a lost deed, executed in another State, was witnessed by John J. C. Knowlton and J. P. Robinson, and it was proved that Knowlton often wrote his name so that it might be read "John H. Knowlton "; *Held,* that the record of a deed between the same parties, witnessed by J. P. Robinson, and "John —— Knowlton," with a character in the name of Knowlton, which appeared to be an attempt of the recorder at a *fac simile* of an illegible initial or initials of a middle name or names, was competent evidence of the lost deed.

TRESPASS, for breaking and entering the plaintiff's close in Hudson, in this county. The parties were owners of adjoining lands, and the principal question on trial was, as to the boundary line between them.

The division line between the parties run northerly and southerly, the defendant owning the land on the westerly side of the boundary line. The plaintiff claimed that a certain large pile of stones was the south-easterly corner bound of the defendant's land, and the south-westerly bound of the tract belonging to the plaintiff. There was also a small pile of stones about four rods easterly of the large pile, and near a large rock, which was claimed by the defendant as his south-easterly corner.

It appeared that John Foster formerly owned and occupied the *Burroughs Farm*, of which the land claimed by the defendant was part; and after parting with his title and occupation, he went to the corner in question, and pointed out the large pile of stones as the south-easterly corner bound of the aforesaid land, and also, on being shown the small pile of stones, said that was no bound.

Chase, a witness for the plaintiff, was permitted to testify to these acts and declarations of Foster, to the competency of which the defendant excepted.

It became material for the plaintiff to show a conveyance from Benjamin Melvin, jr., to himself, of the tract claimed by him. It was proved that at a certain time, a deed was executed by Benjamin Melvin, jr., to himself, but the witness could not state the contents of the deed further, than that it was a conveyance of land in New Hampshire. This deed was proved to be lost.

John P. Robinson, the witness, testified that he wrote the deed and witnessed it, in Lowell, Massachusetts, and also, that it was witnessed by John J. C. Knowlton, then of Lowell; that he knew the handwriting of Knowlton well, and his signature, and that he often wrote his name so that it might well be read, "John H. Knowlton," but would not be likely to be read, "John S. C. Knowlton." He further testified that he wrote the deed between the first Monday in March and the first Monday in April, 1828.

An office copy, claimed by the plaintiff to be a copy of the same deed, was offered by him in evidence, purporting to be the copy of a deed from Benjamin Melvin, jr. to the plaintiff, dated March, 22, 1828, and conveying the land claimed by the plaintiff. He also produced the original record from which this copy was taken.

The copy from the record, and the record produced in Court, purported to be of a deed, acknowledged in Middlesex county; and recorded March 24, 1828, and showed the deed to have .been witnessed by John P. Robinson and John ―― Knowlton; the name of Knowlton in the record, having between the christian and surname a character, or characters, which appeared to be

an attempt of the recorder at a *fac simile* of some obscure or illegible initial or initials of a middle name or names in the original deed; and which, in the record, might be read " H." or " J. C.," but was not properly either.

The defendant contended that the name of this subscribing witness to the deed was to be read in the record " John J. C. Knowlton," and therefore, it appeared that the record was not a copy of the original deed, of which proof had been made.

The objection was overruled, and it was left to the jury to say whether the deed recorded was the same which was proved to have been executed in Lowell.

The jury found a verdict for the plaintiff, which the defendant moves to set aside.

*Atherton* and *Farley*, for the plaintiff.

*Parker* and *Pierce*, for the defendant.

PERLEY, J.  In the case of *Shepherd* v. *Thompson*, 4 N. H. Rep. 213, it was decided that the declarations of deceased persons, as to boundaries of lands, are not admissible, when it appears that they have, from their situations, an interest to make the declarations.  The true rule on this subject is said, in the same case, to be, that in questions upon a boundary, declarations as to the common opinion of the place made by deceased persons, who, from their situation, had the means of knowledge, and no interest to misrepresent, have been generally considered as admissible.

In *Prescott* v. *Hawkins*, (*ante*, 191,) a witness for the plaintiff testified that a deceased surveyor of Holderness, who was understood to have made the original survey and division of that town, went to the spot and pointed out a boundary as the corner of a certain lot, and the evidence was held in this Court to be competent.

Evidence of the same nature was received in *Smith* v. *Powers*, in Grafton county; and we consider it to be well settled in the practice of this State, that, on a question of ancient boundaries,

the declaration of a deceased person made on the spot, pointing out an old monument, is competent evidence, if the person had at the time no interest to misrepresent, and, from his situation, as owner of adjoining land or otherwise had the means of information. And though the person pointing out the monument may formerly have had an interest to establish the boundary in question, yet, if at the time when the declaration was made, his interest was discharged, it would seem that his declaration would be competent. *Van Deusen* v. *Turner*, 12 Pick. 532.

The declarations of Foster come clearly within this rule, and were properly admitted.

The deed of Benjamin Melvin, jr., to the plaintiff, was proved to have been lost. This laid the foundation for the admission of secondary evidence. Whether there are degrees of secondary evidence, is a question which has been discussed in numerous cases, and the decisions are by no means harmonious. In England, the weight of authority would seem to be against admitting any legal distinction in the different kinds of secondary evidence. In this country, the current of the decisions appears to be in the other direction.

Where a deed, in order to complete the title under our statutes, is required to be registered, the presumption will be, until the contrary is shown, that it was recorded. The deed, by our registration laws, is recorded or enrolled by a public officer in a public office; and this registration, required and regulated by law, is certainly more satisfactory evidence of the contents of the deed recorded, than the recollection of a witness, or any other evidence likely to be within the reach of the party, and may well be regarded as of a different and higher nature. In this view of the question, where the estate conveyed requires the deed to be recorded, better evidence of the contents than the testimony of witnesses is presumed to exist, until it is shown that the deed was not in fact recorded: In England, it is to be observed that there is no law providing for the general registration of deeds, and this consideration may have influenced the decisions in that country.

In this State, it is believed to have been the practice, in case

Melvin *v.* Marshall.·

of a lost deed, to prove the execution by the subscribing wit-nesses, as where the original is produced ; to give in evidence a copy from the records, with such other proof as the party was able to produce, to show that the deed recorded was the same that the witnesses had seen executed. That we think the pro-per course, and the same which appears to have been taken in this case. It is not perhaps necessary to decide in this case whether the plaintiff was bound to produce the record or a copy from it. The record was at least competent evidence of the contents of the deed, provided the deed recorded and the deed executed at Lowell was the same.

Was the evidence competent to go to the jury, that the deed recorded was the same deed, the execution of which the plaintiff had proved ? The plaintiff proved that a deed from Benjamin Melvin, jr., to himself, of land in New Hampshire, was executed at Lowell, ;in the county of Middlesex, between the first of March and the first of April, 1828, witnessed by John P. Robinson and John J. C. Knowlton ; that Knowlton often wrote his name so obscurely that it might well be read John H. Knowlton.

He produces the record of a deed, dated March 22, 1828, acknowledged in the county of Middlesex, witnessed by John P. Robinson, and John Knowlton, with a character in the name of Knowlton which indicates that the initials of Knowlton's middle name or names were so obscure in the original, that the recorder could not make them out. There is no evidence or suggestion that any other deed had ever passed between the parties.

We think it extremely clear that it was properly left to the jury to say whether the deed recorded was the same that was executed at Lowell. If the variance had been much greater, the jury might well find that the deed was the same. Indeed, considering the way in which the witness was in the habit of signing his name, it can hardly be said that any variance at all is shown between the record and the other evidence of the deed. If the initials in the original were so illegible that the recorder could not read them, and attempted a *fac simile,* as appears to have been the case, would he be likely to come nearer the

description which Mr. Robinson gives of Knowlton's signature ?

Both exceptions to the evidence must be overruled, and there must be

*Judgment on the verdict.*